**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

| | |
|---|---|
| PRESCILA LOVELL,<br>for herself, as a private attorney general,<br>and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CAL. CIVIL CODE § 1750 *et seq.*;**<br><br>**(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500 *et seq.*;**<br><br>**(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200 *et seq.***<br><br>JURY TRIAL DEMANDED |

Plaintiff Prescila Lovell, individually, as a private attorney general, and on behalf of all others similarly situated, alleges as follows, on personal knowledge and the investigation of her counsel, against Defendant Lowe's Home Centers, LLC ( "Lowe's" or "Defendant"):

I.  **INTRODUCTION AND SUMMARY**

1.      Lowe's represents itself as a home improvement retailer. Lowe's operates Lowe's retail stores and its website, lowes.com, where it advertises, markets, and sells a wide variety of home-related goods throughout California and the United States. This lawsuit concerns only particular products sold by Lowe's that it advertises with false discounts—specifically (1) Bali

and Levolor branded blinds and shades; and (2) major appliances, e.g., refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers (collectively, the "Products").

2.     For years, Lowe's has engaged in a massive and consistent false discount advertising scheme both in its retail stores and on its website by advertising perpetual discounts on the Products. These discounts are taken from Lowe's' advertised strikethrough reference prices for the Products. Lowe's represents these reference prices to be Lowe's' regular and normal prices of the Products, from which the advertised discounts are calculated.

3.     Lowe's' advertised discounts and reference prices are false because Lowe's advertises perpetual discounts off the Products, and thus rarely if ever offers the Products at their advertised reference price.

4.     Lowe's' deceptive pricing scheme is intended to trick consumers into believing that its Products are worth, and have a market value equal to, the inflated reference price, and that the lower advertised sale price represents a special bargain. Lowe's perpetrates this illegal scheme in order to induce consumers to purchase the Products and to charge more for the Products than it otherwise could have charged.

5.     Lowe's' false discount advertising harms consumers like Plaintiff by causing them to pay more than they otherwise would have paid and to buy Products that they otherwise would not have bought. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury."). Customers do not enjoy the actual discounts Lowe's promises them, and the Products are not in fact worth the amount that Lowe's represents to them. Lowe's' deceptive pricing scheme also artificially increases the demand for the Products and causes all customers, including Plaintiff and Class members, to pay price premiums to Lowe's.

6.     Lowe's' false discount advertising violates California's Consumers Legal Remedies Act (CLRA), California Civil Code § 1750 *et seq.*; False Advertising Law (FAL), California Business & Professions Code § 17500 *et seq.*; and Unfair Competition Law (UCL), California Business & Professions Code § 17200 *et seq.*

7.     Plaintiff brings this lawsuit individually and on behalf of a class of California consumers who purchased from Lowe's one or more Products advertised with a discount. Plaintiff seeks restitution and/or disgorgement for herself and for each of the California class members. Additionally, Plaintiff, acting as a private attorney general, seeks public injunctive relief to protect the general public by enjoining Lowe's from engaging in the unlawful false advertising scheme alleged herein.

## II.     THE PARTIES

8.     Plaintiff Prescila Lovell is a citizen and resident of the city of Camino, in El Dorado County, California.

9.     Defendant Lowe's Home Centers, LLC is a limited liability company incorporated in North Carolina with its principal place of business at 1000 Lowes Blvd, Mooresville, North Carolina, 28117. Lowe's Home Centers, LLC owns and operates over 2,000 Lowe's brick-and-mortar retail stores throughout the United States, including 112 in California. Lowe's Home Centers, LLC also owns and operates the Lowe's website, lowes.com.

## III.     JURISDICTION AND VENUE

10.     **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from Lowe's.

11.     **Personal Jurisdiction.** This Court has personal jurisdiction over Lowe's because, without limitation: (1) Lowe's is headquartered in this District; (2) Lowe's is incorporated in North Carolina; and (3) Lowe's is authorized to do business and regularly conducts business in this District.

- 3 -

12.      **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because Lowe's is headquartered in this District, and the claims alleged herein are based on decisions and actions by Lowe's which took place in this District.

## IV.    LOWE'S' FALSE DISCOUNT ADVERTISING SCHEME

13.      Lowe's operates Lowe's retail stores and its website, lowes.com, where it advertises, markets, and sells a wide variety of home-related goods throughout California and the United States. Lowe's sells Products from national brands, as well as exclusive Products that are only available from Lowe's.

14.      For years, Lowe's has engaged in a massive and consistent false discount advertising scheme in its retail stores and on its website concerning the Products. Specifically, Lowe's advertises perpetual discounts on the Products. These discounts are taken from Lowe's' advertised strikethrough reference prices for the Products, which are presented as Lowe's' own regular selling prices for the Products. However, unbeknownst to its customers, Lowe's' discounts are never-ending, and the Products are never or almost never offered at the supposed regular price. Lowe's perpetrates this illegal scheme in order to induce consumers to purchase the Products and to increase the amount it can charge for the Products.

15.    **Bali and Levolor Shades and Blinds.** For example, Lowe's advertised a supposedly limited time sale of 35% off of Bali shades and 20% off Bali blinds for the period September 12, 2024 through October 2, 2024, both in-store and online. See the photo and screenshot below at **Figure 1**.

**Figure 1:    Limited-Time "Sale" of Bali Shades & Blinds From 9/12/24 – 10/2/24**

| **Lowe's Retail Store**<br>(Photo taken 9/26/2024) | **Lowe's Website**<br>(Screenshot taken 9/26/2024) |
|---|---|




16.    However, this sale and the advertised discounts were fictitious; in fact Lowe's nearly always offered the Bali blinds and shades for <u>at least</u> 20% to 35% off, such that the discount was not the advertised "Special Value" at all.

17.    For instance, as the photo above shows, Lowe's advertised that the Bali sale ended on October 2, 2024. Yet starting October 3, 2024, Lowe's replaced the 20% to 35% off Bali "sale" with a new 30% to 50% off Bali "sale." See the photo and screenshot below at **Figure 2**.

**Figure 2: Bali "Sale" Ending 10/2/2024 Replaced With Bigger "Sale" Ending 10/16/2024**
(20–35% Off sale replaced with 30–50% Off sale on 10/3/24)

| Lowe's Retail Store Signage | Lowe's Website |
|---|---|
| (Photo taken 10/9/2024) | (Screenshot taken 10/9/2024) |





18.　　　And then, when this next 30%–50% off sale on Bali Blinds and Shades expired on October 16, 2024, Lowe's simply extended the sale, with a new end date of October 30, 2024.

19.　　　Thus, a Lowe's customer who was induced to purchase Bali shades on September 26, 2024, because he or she did not want to miss out on the supposedly limited time 35% off sale, actually <u>paid more</u> than the customer would have paid if he or she had waited until the sale was supposedly over. The customer could have waited a week and gotten 50% off the reference price (instead of only 35% off) of the shades if the customer had not been tricked by Lowe's. Meanwhile, in all instances, the amount of the advertised discount was false because Lowe's <u>never</u> sold the shades at the advertised reference price.

20.　　　Lowe's advertises perpetual sales for all of its Bali and Levolor branded blinds, typically between 20% to 50% off. Below at **Figure 3** is a table showing how Lowe's advertised back-to-back sales events for Bali and Levolor blinds and shades for over a month straight, from July 31, 2022, to September 14, 2022. The table is followed by screenshots of Lowe's website

- 6 -

demonstrating the sales. Consistent with Lowe's standard practice and policy, when one "sale" expired it was either extended or another similar sale immediately took its place.

**Figure 3: Table Showing Perpetual Sales of Bali and Levolor Blinds**

| "Limited Time" Sale Period | Advertised Sale Event Discount |
|---|---|
| 7/31/22 – 8/10/22 | Up to 30% Off Bali and Levolor blinds and shades |
| 8/11/22 – 8/24/22 | Up to 35% Off Bali and Levolor blinds and shades |
| 8/25/22 – 9/07/22 | 40% Off Levolor blinds and shades |
| 8/25/22 – 9/14/22 | Up to 30% Off Bali blinds and shades |

21. Below are Lowe's website screenshots corresponding to the continuous sale events in the table above (red boxes added).

**Advertised Limited-Time Sale of Bali & Levolor Products Ending 8/10/2022**
(Screenshot taken 7/31/2022)



**Sale Ending 8/10/2022 Replaced with Bigger "Sale" Ending 8/24/2022**

(Screenshot taken 8/11/2022)



**Sale Ending 8/24/2022 Replaced With Sales Ending 9/7/2022 & 9/14/2022**

(Screenshot taken 8/25/2022)



22.     Lowe's advertises the perpetual discounts and "savings" on the blinds and shades category webpages as shown above, and also on the product list pages and the individual product pages as shown below. On its product list pages and on the individual product pages, Lowe's advertises the purported regular price with a strikethrough (e.g., ~~$138.27~~), and displays a specific dollar amount of promised savings in green text (e.g., "Save $41.48"). The "savings" is calculated by applying the advertised percentage off sale (e.g., the 30% off Bali Blinds and Shades shown in the screenshot above) to the strikethrough regular price.

**Product List Page Displaying Discounted Bali Blinds & Shades – 9/12/2024**



**Product List Page Displaying Discounted Levolor Blinds & Shades – 9/12/2024**

23.     In the online shopping cart, Lowe's advertises the strikethrough regular price, the dollar amount "savings," and the bogus sale "Ends" date. Lowe's also prefaces the strikethrough price with the word "Was" (e.g., "Was $307.84"), to further indicate that the higher strikethrough price was Lowe's' previous and usual selling price for the Product. See the screenshots below.

**Lowe's Online Shopping Cart – 9/17/2024**



Zoom In of Pricing and Discount Representations (Including "Was" Price)

24.     However, all of these sale advertisements and promises of savings for the Bali and Levolor blinds and shades (the "Products") were false. Lowe's never previously offered or sold the Products at the advertised strikethrough reference price (i.e., the "Was" price). Likewise, Lowe's' advertisements that the discounts were for a limited time, and that they would end on a

certain date, were false, because the Products were in fact perpetually on sale and Lowe's <u>never</u> offered the Products at the full price.

25.     **Major Appliances.** Lowe's similarly advertises perpetual "sales" on major appliances, such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers (also, the "Products").

26.     Lowe's typically advertises discounts on its major appliances by advertising (on the in-store price placards affixed to the Products, and on its website product pages) a lower discounted price, next to a purported regular price with a strikethrough (the "reference price"). Lowe's also advertises a "SAVE $xx" dollar amount beside the supposedly discounted selling price. In its retail stores, Lowe's also prefaces the strikethrough price with the word "WAS" (e.g., "WAS $~~1499~~"), to further indicate that the higher strikethrough price was Lowe's' previous and usual selling price for the product. Likewise, on its website, Lowe's describes the reference price as the "Was" price in in the online shopping cart.

27.     The individual appliance advertisements also typically state or indicate that they are for a limited time. On the price placards that Lowe's affixes to the appliances in its retail stores, Lowe's states the discounted price is "Valid thru mm/dd/yyyy" (e.g., "Valid thru 9/24/2024"). On its website, Lowe's similarly states that the discounted price for the appliance "Ends mm dd" (e.g., "Ends Sep 24"). Lowe's advertises that its discounts are for a limited time, with a certain end date, in order to induce its customers to purchase the appliances immediately so that they do not miss out on the supposed "sale."

28.     Below at **Figure 4** are examples of Lowe's' discount advertising for major appliances both in-store and online, which demonstrate Lowe's' advertising of reference prices, sale prices, dollar savings, and sale end dates. The top image is a photo taken in a Lowe's store on September 26, 2024, of an in-store price placard for an LG Dishwasher. The bottom image is a screenshot of the Lowe's website product page for that same LG Dishwasher taken on that same day.

- 11 -

**Figure 4:** **Advertisements for LG 24-in Front Control Built-In Dishwasher** (Item No. 5686041)

**Lowe's Retail Store**
**(9/26/2024)**



**Lowe's Website**
**(9/26/2024)**



29.     However, these sale advertisements were false. In fact, Lowe's <u>never</u> previously sold the LG dishwasher at the advertised "WAS" reference price of $829.00. Lowe's <u>always</u> offered and sold the dishwasher at a much lower price, typically between $449.00 and $549.00. And Lowe's' statement that the discounted price was for a limited time ending on October 2, 2024, was also false. For example, starting on October 3, 2024 (the day after the sale purportedly ended), Lowe's continued advertising the LG dishwasher at the same $499.00 discounted price, but now advertised a sale end date of October 16, 2024.

30.     Below at **Figure 5** is a historical price table showing how Lowe's advertised back-to-back sale periods for this same LG dishwasher (Item No. 5686041) in months prior. Consistent with Lowe's' standard practice and policy, when one "sale" expired it was either extended or another similar sale immediately took its place.



**Figure 5:  Table Showing Perpetual "Discounts" on LG Dishwasher**
         (Item No. 5686041)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 4/25/24 – 5/01/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 5/02/24 – 5/08/24 | ~~$829.00~~ | $549.00 | "Save $280.00" |
| 5/09/24 – 5/15/24 | ~~$829.00~~ | $549.00 | "Save $280.00" |
| 5/16/24 – 5/22/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 5/23/24 – 5/29/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 5/30/24 – 6/05/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 6/06/24 – 6/19/24 | ~~$829.00~~ | $549.00 | "Save $280.00" |
| 6/20/24 – 6/22/24 | ~~$829.00~~ | $449.00 | "Save $380.00" |
| 6/23/24 – 7/17/24 | ~~$829.00~~ | $509.00 | "Save $320.00" |

31.     Lowe's' advertised sales and discounts for the LG Dishwasher were false. Likewise, the advertised limited-time nature of the sales (e.g., the "Valid thru" dates and sale

"Ends" dates) were false. Lowe's always offered the dishwasher for hundreds of dollars less than the supposed "WAS" strikethrough price.

32.     Lowe's' false discount advertising for the LG Dishwasher is typical and representative of the false discount advertising Lowe's perpetrates for all of its "discounted" major appliances.

33.     For example, below at **Figure 6** is an in-store photo taken on September 24, 2024, of the price placard for a Whirlpool Electric Range (Item No. 803967), which was similarly advertised with false discounts and false limited-time sale advertising.

**Figure 6:    In-Store Advertisement for Whirlpool Electric Double-Oven Range**
(Item No. 803967)

**Lowe's Retail Store**
(9/24/2024)



34.     However, these discount advertisements were false. In fact, Lowe's <u>never</u> previously sold the Whirlpool Electric Range at the advertised "WAS" reference price of

- 14 -

$1899.00. Lowe's <u>always</u> offered and sold the dishwasher at a much lower price, typically between $1199.00 and $1599.00. And Lowe's' statement that the discounted price was for a limited time ending on October 2, 2024, was also false. Lowe's has continued to perpetually advertise the electric range at a similar discount with continually extended "Valid thru" dates, through the date of this Complaint.

35. Below at **Figure 7** is a historical price table showing how Lowe's advertised back-to-back sale periods for this same Whirlpool Electric Range (Item No. 803967) in months prior. Consistent with Lowe's' standard practice and policy, when one "sale" expired it was either extended or another similar sale immediately took its place.



**Figure 7: Perpetual "Discounts" on Whirlpool Electric Double-Oven Range** (Item No. 803967)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$1,899.00~~ | $1,299.00 | "Save $600.00" |
| 4/25/24 – 5/1/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/02/24 – 5/08/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/09/24 – 5/15/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/16/24 – 5/22/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/23/24 – 5/29/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/30/24 – 6/05/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 6/06/24 – 7/10/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 7/11/24 – 7/21/24 | ~~$1,899.00~~ | $1,599.00 | "Save $300.00" |

36. Lowe's' false discount advertising for the LG Dishwasher and the Whirlpool Electric Range described above is typical and representative of the false discount advertising Lowe's perpetrates for all of its "discounted" major appliances. Below at **Figure 8** through **Figure 10** are historical price tables demonstrating similar perpetual false discounting by Lowe's for other types of major appliances such as refrigerators, washer/dryers, and microwaves.

- 15 -

**Figure 8: Perpetual "Discounts" on Frigidaire 18.3-cu ft Refrigerator**
(Item No. 5686031)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 4/25/24 – 5/01/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 5/02/24 – 5/08/24 | ~~$799.00~~ | $629.00 | "Save $170.00" |
| 5/09/24 – 5/15/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 5/16/24 – 5/22/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 5/23/24 – 5/29/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 5/30/24 – 6/05/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 6/06/24 – 6/10/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 6/11/24 | ~~$799.00~~ | $579.00 | "Save $222.00" |
| 6/12/24 – 7/10/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 7/11/24 | ~~$799.00~~ | $629.00 | "Save $170.00" |
| 7/12/24 – 7/21/24 | ~~$799.00~~ | $629.00 | "Save $170.00" |

 **Figure 9:  Perpetual "Discounts" on Whirlpool Top-Load Washer**
(Item No. 782472)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 4/25/24 – 5/01/24 | ~~$699.00~~ | $518.00 | "Save $181.00" |
| 5/02/24 – 5/08/24 | ~~$699.00~~ | $518.00 | "Save $181.00" |
| 5/9/24 – 5/15/24 | ~~$699.00~~ | $518.00 | "Save $181.00" |
| 5/16/24 | ~~$699.00~~ | $448.00 | "Save $251.00" |
| 5/17/24 – 5/22/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 5/23/24 – 5/29/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 5/30/24 – 6/05/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 6/06/24 – 6/25/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 6/26/24 – 7/10/24 | ~~$699.00~~ | $448.00 | "Save $251.00" |
| 7/11/24 – 7/17/24 | ~~$699.00~~ | $499.00 | "Save $200.00" |
| 7/18/24 – 7/21/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |

 **Figure 10: Perpetual "Discounts" on Samsung Microwave**
(Item No. 5760681)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$459.00~~ | $329.00 | "Save $130.00" |
| 4/25/24 – 5/1/24 | ~~$459.00~~ | $329.00 | "Save $130.00" |
| 5/2/24 – 5/8/24 | ~~$459.00~~ | $329.00 | "Save $130.00" |
| 5/9/24 – 5/15/24 | ~~$459.00~~ | $329.00 | "Save $130.00" |
| 5/16/24 – 5/22/24 | ~~$459.00~~ | $299.00 | "Save $160.00" |
| 5/23/24 – 5/29/24 | ~~$459.00~~ | $299.00 | "Save $160.00" |
| 5/30/24 – 6/5/24 | ~~$459.00~~ | $299.00 | "Save $160.00" |
| 6/6/24 – 7/10/24 | ~~$459.00~~ | $299.00 | "Save $160.00" |
| 7/11/24 – 7/21/24 | ~~$459.00~~ | $332.00 | "Save $127.00" |

37.     Lowe's also prominently advertises continuous back-to-back "sales events" for its major appliances in its stores and on its website. For example, Lowe's advertised a limited-time "Up To 35% Off" sale on major appliances for the period September 26, 2024, through October 23, 2024, both in-store and online. See the photo and screenshot below at **Figure 11**.

**Figure 11: "Get Up to 35% Off" Sale Event on Major Appliances, 9/26/24 – 10/23/24**

**Lowe's Retail Store Signage**
(Photo taken 10/9/2024)



**Lowe's Website Homepage**
(Screenshot taken 9/26/2024)

38.     However, the advertised special sale event was phony; in fact Lowe's <u>always</u> offered its major appliances for at least 30% to 40% off, such that the advertised discounts were false.

39.     Below at **Figure 12** is a table showing how Lowe's advertised back-to-back appliances sales events for over six months straight, from April 4, 2024, to October 23, 2024. The data, like the other evidence presented in this Complaint, was collected as part of counsel's investigation of the Lowe's website and from visits to Lowe's stores. Consistent with Lowe's'

- 19 -

standard practice and policy, when one "sale" expired it was either extended or another similar sale immediately took its place.

**Figure 12:   Table Showing Perpetual Major Appliances Sales Events**

| Sale Period | Advertised Sale Event Discount | Stated Sale End Date |
|---|---|---|
| 1/04/24 – 1/24/24 | Up to 35% Off Select Major Appliances | "Offer ends 1/24/24" |
| 1/25/24 – 2/07/24 | Up to 35% Off Select Major Appliances | "Offer ends 2/07/24" |
| 2/08/24 – 2/28/24 | Up to 35% Off Select Major Appliances | "Offer ends 2/28/24" |
| 2/29/24 – 3/20/24 | Up to 35% Off Select Major Appliances | "Offer ends 3/20/24" |
| 3/21/24 – 4/03/24 | Up to 30% Off Select Major Appliances | "Offer ends 4/03/24" |
| 4/04/24 – 5/01/24 | Up to 35% Off Select Major Appliances | "Offer ends 5/01/24" |
| 5/02/24 – 5/15/24 | Up to 35% Off Select Major Appliances | "Offer ends 5/15/24" |
| 5/16/24 – 6/18/24 | Up to 35% Off Select Major Appliances | "Offer ends 6/18/24" |
| 6/19/24 – 7/10/24 | Up to 40% Off Select Major Appliances | "Offer ends 7/10/24" |
| 7/11/24 – 8/07/24 | Save On Select Major Appliances | "Offer ends 8/07/24" |
| 8/08/24 – 8/21/24 | Up to 35% Off Select Major Appliances | "Offer ends 8/21/24" |
| 8/22/24 – 9/11/24 | Up to 40% Off Select Major Appliances | "Offer ends 9/22/24" |
| 9/12/24 – 9/25/24 | Up to 35% Off Select Major Appliances | "Offer ends 9/25/24" |
| 9/26/24 – 10/23/24 | Up to 35% Off Select Major Appliances | "Offer ends 10/23/24" |

40.     Lowe's advertises the perpetual discounts and sales events on its major appliances in its stores, on its website homepage (see Figure 11 above), and on its major appliances category webpages. And as described above (see Figures 4 and 6), Lowe's advertises false reference prices (the "WAS" strikethrough price) adjacent to false statements of savings ("SAVE $xx") and a false sale end date, in order to trick consumers into falsely believing that if they do not act now, they will miss out on a special limited-time "deal." As a result of Lowe's' fraud, customers pay more for the Products than they otherwise would have paid.

41.     In the online shopping cart, Lowe's advertises the strikethrough regular price, the dollar amount "savings," and the bogus sale "Ends" date. Lowe's also prefaces the strikethrough

price with the word "Was" (e.g., "Was $559.00"), to further indicate that the higher strikethrough price was Lowe's previous and usual selling price for the Product. See the screenshots below.

**Lowe's Online Shopping Cart – 9/23/2024**



Zoom In of Pricing and Discount Representations (Including "Was" Price)



42.     However, all of these sale advertisements and promises of savings by Lowe's for its major appliances, like its advertisements for Bali and Levolor blinds and shades, were false. Lowe's never previously offered or sold the Products at the advertised reference price (i.e., the "Was" price). Likewise, Lowe's' advertisements that the discounts were for a limited time, and that they would end on a certain date, were false, because the Products were in fact perpetually on sale and Lowe's never offered the Products at the full price.

## V.  PLAINTIFF'S ALLEGATIONS ARE BASED ON HER COUNSEL'S COMPREHENSIVE INVESTIGATION INTO LOWE'S' PRACTICES

43.     Plaintiff's allegations concerning Lowe's' false discount advertising are based in part on Plaintiff's counsel's investigation of the Lowe's website using the Internet Archive's Wayback Machine (available at www.archive.org).[1] Plaintiff's allegations are also based on daily screenshots and pricing data compiled from Plaintiff's counsel's own scraping of the Lowe's website with a proprietary software program. Plaintiff's counsel also investigated Lowe's' in-store practices by regularly visiting Lowe's retail stores.

44.     Counsel's investigation confirms that Lowe's' perpetual sales on the Products have persisted on the Lowe's website continuously since at least April 2021 (and likely earlier). Plaintiff's counsel examined screenshots of over a hundred randomly selected days of the Lowe's website from the Internet Archive's Wayback Machine, going back to 2021. On every randomly selected day during this period, the Lowe's website displayed purportedly time-limited discounts for the Products. Likewise, counsel's analysis of the daily screenshots and pricing data compiled with counsel's proprietary software program shows that Lowe's' perpetual "sales" and false discounts continue to this day.

45.     Also based on the investigation of Plaintiff's counsel, Lowe's offers and advertises its Products with identical reference prices and at substantially the same sale prices both on the Lowe's website and in its retail stores. Likewise, Lowe's' advertised "sale events" and sale "end" dates for its major appliances and Bali and Levolor blinds and shades are substantially the same in-store and online.

46.     In fact, Lowe's effectively treats its online and in-store sales channels as the same. Customers can make purchases through the Lowe's website and pick up the items in-store. Lowe's also encourages its customers, while shopping in-store, to view Lowe's' website and use Lowe's' smartphone app to view and learn more about the Products.

---

[1] The Internet Archive is an internet library that archives webpages. For more information: https://archive.org/about/.

## VI. LOWE'S' FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES CALIFORNIA LAW

47.     Decades of academic research has established that the use of reference prices and discount advertising like that utilized by Lowe's materially impacts consumers' behavior. A reference price (e.g., the strikethrough "Was" reference price advertised by Lowe's from which the advertised discounts and savings are calculated) affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[2]

48.     When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as Lowe's, advertise their products with inflated false reference prices and false discounts. The false reference prices deceive consumers, deprive consumers of a

---

[2] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

49. As a direct and proximate result of Lowe's' false reference prices and false discounts, Plaintiff and Class members were harmed and lost money or property.

50. First, Plaintiff and Class members were harmed because they would not have purchased the Products at the prices they paid had they known that the discounts were fake and that the Products had not in fact been regularly offered at the higher listed price. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury.").

51. Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

52. Additionally, just as Lowe's intended, Lowe's' false advertising of limited-time sales events (which were in fact perpetual) created a false sense of urgency, which made consumers more likely to make a purchase.

53. Second, Plaintiff and Class members were harmed because they did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts Lowe's represented and promised to them. Plaintiff and Class members did not receive Products that were worth the inflated amount that Lowe's represented to them. The Products did not regularly sell for, and did not have a market value of, the fictitious strikethrough reference price advertised by Lowe's.

- 24 -

54. Third, Plaintiff and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from Lowe's deceptive pricing scheme. Lowe's false discount advertising scheme artificially increases consumer demand for Lowe's' Products, which shifts the demand curve and allows Lowe's to charge more for its Products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations. Lowe's false advertising scheme enabled Lowe's to charge everyone more for all of the Products by artificially stimulating demand based on false pretenses. *See*, *e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial"). Without the misrepresentations, Lowe's would have had to charge less for the Products in order to enjoy the same level of demand.

55. In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets. A retailer's use of false reference prices constitutes an unfair method of competition and harms honest competitors that sell the same or similar products or otherwise compete in the same market, using valid and accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

56. Federal and state courts have articulated the abuses that flow from false discount advertising practices. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

- 25 -

57.     The California Court of Appeal has likewise recognized the importance of California's false discount advertising statutes in protecting consumers: "Our Legislature has adopted multiple statutes that specifically prohibit the use of deceptive former price information and misleading statements regarding the amount of a price reduction. … These statutes make clear that … our Legislature has concluded 'reasonable people can and do attach importance to [a product's reference price] in their purchasing decisions.'" *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 730 (2018) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 333 (2011)).

58.     California law prohibits false reference pricing practices such as those perpetrated by Lowe's.

59.     California's Consumers Legal Remedies Act (CLRA) prohibits "advertising goods or services with the intent not to sell them as advertised," and specifically prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

60.     California's False Advertising Law (FAL) prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely indicating that a Product is on sale, when it actually is not. Moreover, the FAL specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding [the advertisement] or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

61.     Finally, California's Unfair Competition Law broadly bans all unlawful, unfair, and deceptive business practices. Cal. Bus. & Prof. Code § 17200.

62.     In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons." 16 C.F.R § 233.1. For example, an advertised former price is false when it is "an artificial, inflated price [that] was established for the purpose of

enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 C.F.R § 233.1(a).

63.    A UCL claim may be predicated on a violation of the Federal Trade Commission's regulations under the UCL's "unlawful" prong. *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017).

64.    As alleged in detail above, Lowe's' advertised reference prices and discounts violate California law because, based on the investigation of Plaintiff's counsel, Lowe's' advertised reference prices are inflated and fictitious, and Lowe's' advertised percentage-off and dollars-off discounts are false. Lowe's' reference prices and discounts are false because Lowe's advertises perpetual discounts off the Products, and thus rarely, if ever, offers the Products at their advertised reference price.

65.    Additionally, because Lowe's advertises perpetual discounts, its advertised former prices were not true former prices and were not the prevailing market price in the three months immediately preceding the advertisement. This is true for Lowe's' exclusive Products because Lowe's' own actual selling prices determine the prevailing market price. *See People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 409 (2019). This is also true for Lowe's' non-exclusive Products "because in competitive markets, the actual prices offered by vendors selling the same item tend to converge on the market price." *Id.* at 416–17. Since Lowe's' advertised former prices are consistently higher than their actual prices, the only reasonable inference is that those advertised prices were not the prevailing market prices during the requisite three-month period. *See id.* at 417; *see also Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *5 (N.D. Cal. Mar. 28, 2024) ("[Plaintiff] need not identify the prices charged by other retailers to plausibly allege that the strikethrough prices were not the prevailing market prices. Instead, the Court can reasonably infer on a motion to dismiss that [Defendant] 'would not continually sell products for prices' for 'less than the market rates at which those products are offered elsewhere.'"); *Vizcarra v. Michaels Stores, Inc.*, 2024 WL 64747, at *5 (N.D. Cal. Jan. 5, 2024) (same); *Knapp v. Art.com, Inc.*, 2016 WL 3268995, at *5 (N.D. Cal. June 15, 2016) (same).

66. The false reference price and false discount representations by Lowe's were material to the decisions of consumers to purchase each Product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased these Products, and consumers purchased these Products on the basis of these representations in order to enjoy the purported discounts.

67. Lowe's' marketing plan is to deceive its customers into believing that the Products are worth, and have a market value equal to, the inflated strikethrough reference price, and that the lower advertised sale price represents a special bargain.

68. The false or misleading nature of Lowe's' reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all the circumstances would not have known or discovered their false or misleading nature.

69. As a direct and proximate result of Lowe's' acts and omissions, all California consumers who have purchased a Product from Lowe's that was advertised with a reference price or purported discount have been harmed and have lost money or property.

70. Lowe's continues to advertise false reference prices and false discounts to this day. There is no reason to believe that Lowe's will voluntarily and permanently cease its unlawful practices. Moreover, in the unlikely event that Lowe's were to cease its unlawful practices, Lowe's can and is likely to re-commence these unlawful practices.

71. In acting toward consumers and the general public in the manner alleged herein, Lowe's acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiff, the Class, and the public.

## VII.   PLAINTIFF'S FACTUAL ALLEGATIONS

72. Plaintiff Prescila Lovell is, and at all relevant times has been, a citizen and resident of the city of Camino, in El Dorado County, California.

73. Ms. Lovell is a victim of Lowe's' false discount advertising scheme.

- 28 -

74.     As detailed above, Lowe's' false discounting practices have been ongoing since at least April 2021. During this time, Ms. Lovell has purchased at least one Product from Lowe's which was advertised with a false reference price and a false discount.

75.     For example, on June 19, 2024, Ms. Lovell visited the Lowe's retail store located at 800 East Bidwell Street, Folsom, California 95630, to shop for a microwave wall oven combo.

76.     While in the Lowe's store, Ms. Lovell viewed pricing and discount representations similar to those described in detail above (e.g., see Paragraphs 25–28, 33, 37).

77.     For example, Ms. Lovell viewed the price placard affixed to a Frigidaire Gallery 27-in Self-Cleaning Air Fry Fingerprint-Resistant Microwave Wall Oven Combo, Item No. 5142769 (the "Microwave Wall Oven Combo"). The placard stated that the Microwave Wall Oven Combo was currently on sale at a "SPECIAL VALUE" of $2899; that the Microwave Wall Oven Combo "WAS $3899"; and that the customer would "SAVE $1000" by buying the Microwave Wall Oven Combo now. The placard also stated that this offer was only valid for a limited time.

78.     Relying on Lowe's' representations, Ms. Lovell reasonably believed that the Microwave Wall Oven Combo was normally offered and sold by Lowe's for the $3899 "WAS" price. Ms. Lovell reasonably believed that the Microwave Wall Oven Combo was thereby worth and had a market value of $3899. Ms. Lovell reasonably believed that the advertised "SPECIAL VALUE" sale price of $2899 represented a special and unusual bargain, where Lowe's was temporarily offering the Microwave Wall Oven Combo at $1000 off (25% off) the regular and normal selling price of $3899. Relying on Lowe's' representations, Ms. Lovell purchased the Microwave Wall Oven Combo.

79.     However, Lowe's' pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Lovell, Lowe's had never offered the Microwave Wall Oven Combo at its advertised regular price of $3899. The Microwave Wall Oven Combo was not in fact worth the $3899 price that Lowe's had led her to believe. Instead, Lowe's had

always advertised the Microwave Wall Oven Combo at a significant discount from its purported regular price.

80. Lowe's' advertised reference price and discounts were material misrepresentations and inducements to Ms. Lovell's purchase.

81. Ms. Lovell reasonably relied on Lowe's' material misrepresentations regarding the advertised reference price and discounts. If Ms. Lovell had known the truth, she would not have purchased the Microwave Wall Oven Combo at the price she paid.

82. As a direct and proximate result of Lowe's acts and omissions, Ms. Lovell was harmed, suffered an injury-in-fact, and lost money or property.

83. When Ms. Lovell shopped at Lowe's, she had no suspicion that Lowe's' advertised reference prices and discounts were false. Lowe's gave Ms. Lovell no reason to be suspicious. Ms. Lovell first learned of Lowe's' false advertising scheme in November 2024 when her attorneys told her about Lowe's' unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Ms. Lovell did not know or suspect that Lowe's was engaging in a false discount advertising scheme or that she had been a victim of the scheme.

84. Ms. Lovell has a legal right to rely now, and in the future, on the truthfulness and accuracy of Lowe's representations regarding the advertised reference prices and discounts for its Products.

85. Ms. Lovell faces an imminent threat of future harm. Ms. Lovell would purchase Products from Lowe's again in the future if she could have confidence regarding the truth of Lowe's' price and discount representations. But without an injunction, Ms. Lovell has no realistic way of knowing which, if any, of Lowe's reference prices, discounts, and sales for the Products are true.

86. Ms. Lovell will be harmed if, in the future, she is left to guess as to whether Lowe's is providing a legitimate sale or not, and whether its Products are actually worth the amount that Lowe's is representing.

87.     If Ms. Lovell were to purchase Products again from Lowe's without Lowe's having changed its unlawful and deceptive conduct alleged herein, Ms. Lovell would be harmed on an ongoing basis and/or would be harmed once or more in the future.

88.     The deceptive practices and policies alleged herein, and experienced directly by Ms. Lovell, are not limited to any single Product. Rather, Lowe's deceptive advertising and sales practices, which advertise and state false reference prices and false percentage-off and dollar-off discounts, were, and continue to be, systematic and pervasive across Lowe's' major appliances and Bali and Levolor blinds and shades.

## CLASS ALLEGATIONS

89.     Plaintiff brings this lawsuit on behalf of herself and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

90.     **Class Definition:** Plaintiff seeks to represent the following Class:

> **All persons who, while in California, within the applicable statute of limitations period, purchased from Lowe's one or more Products[3] advertised at a discount.**

91.     Specifically excluded from the Class are Lowe's and any entities in which Lowe's has a controlling interest, Lowe's' agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

92.     **Application of the Discovery Rule.** This Court should apply the discovery rule to extend any applicable limitations period and corresponding class period to the date on which Lowe's first engaged in its unlawful false discounting practices. Based on counsel's investigation, Lowe's false discount advertising practices have been ongoing since at least April 2021, and likely began much earlier. However, without discovery, Plaintiff cannot determine what date, earlier than April 2021, that Lowe's first began advertising false discounts for the Products.

---

[3] "Products" are defined in this Complaint as Bali and Levolor blinds and shades, and major appliances such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers.

93.     The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007). Plaintiff and the members of the Class did not know, and could not have reasonably known, about Lowe's' unlawful conduct.

94.     When Plaintiff shopped at Lowe's, she had no suspicion that Lowe's' advertised reference prices and discounts were false. Lowe's gave Plaintiff no reason to be suspicious. Plaintiff first learned of Lowe's' false discount advertising scheme in November 2024 when her attorneys told her about Lowe's' unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Plaintiff did not know or suspect—and had no reason to suspect—that Lowe's was engaging in a false discount advertising scheme or that she had been a victim of the scheme.

95.     Likewise, Class members would not know or suspect that Lowe's was engaging in this deceptive pricing scheme. Reasonable consumers presume that retailers are not engaging in unlawful conduct. Reasonable consumers would believe that Lowe's' pricing and discount representations were true. Reasonable consumers would believe that Lowe's' strikethrough reference prices (1) represent Lowe's' regular and normal prices that consumers had to pay for the Products; (2) represent Lowe's' recent former prices of the Products (that is, the prices at which the Products were regularly offered for sale before the limited-time offer went into effect); and (3) represent the Lowe's prices that consumers will have to pay for the Products when the sale ends. Reasonable consumers would believe that Lowe's' advertised discounts represent a reduction from the regular and recent former prices of the Products in the amounts advertised.

96.     Moreover, Plaintiff and the Class could not have, with the exercise of reasonable diligence, discovered Lowe's' false advertising scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover—especially regarding Products that are purchased infrequently such as major appliances and window blinds and shades.

97.     Consumers who shopped at Lowe's would have no way of knowing, with the exercise of reasonable diligence, the true daily price histories and past selling prices for the

- 32 -

Products they viewed and purchased. Consumers would have no way to know, with the exercise of reasonable diligence, that the advertised Lowe's regular prices (i.e., the strikethrough reference prices) were fictitious and inflated and that the advertised percentage-off and dollars-off savings were false.

98.     Plaintiff's counsel only found evidence for Lowe's' deceptive pricing scheme by conducting an extensive and expensive investigation that no reasonable person would conduct.

99.     **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises hundreds of thousands of individuals. The exact number and identities of Class members are contained in Lowe's' records and can be easily ascertained from those records.

100.     **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a.     Whether the alleged conduct of Lowe's violates the California Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*;

b.     Whether the alleged conduct of Lowe's violates the California False Advertising Law, California Business & Professions Code § 17500 *et seq.*;

c.     Whether the alleged conduct of Lowe's violates the California Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*;

d.     Whether the alleged conduct of Lowe's violates 16 C.F.R § 233.1 *et seq.*;

e.     Whether Plaintiff and the Class have suffered injury and have lost money or property as a result of Lowe's' unlawful conduct; and

f.     Whether Lowe's should be enjoined from engaging in the unlawful conduct alleged herein.

101. **Typicality.** Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all sustained injury as a direct result of Lowe's' standard practices and schemes, bring the same claims, and face the same potential defenses.

102. **Adequacy.** Plaintiff and her counsel will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests and is committed to representing the best interests of the Class members. Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

103. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Lowe's' conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

104. By its conduct and omissions alleged herein, Lowe's has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

105. Lowe's is primarily engaged in the business of selling goods. Each cause of action brought by Plaintiff against Lowe's in this Complaint arises from and are limited to statements or conduct by Lowe's that consist of representations of fact about Lowe's' business operations or goods that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Lowe's' goods or the statements are or were made in the course of delivering Lowe's' goods. Each cause of action brought by Plaintiff against Lowe's in

- 34 -

this Complaint arises from and is limited to statements or conduct by Lowe's for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.

## CAUSES OF ACTION

### COUNT I
**Violation of the Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750 *et seq.***

106. Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

107. Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

108. Lowe's' Products are "goods" as defined by California Civil Code § 1761(a).

109. Lowe's is a "person," as defined by Cal. Civ. Code § 1761(c).

110. Plaintiff and Class members are each "consumers," as defined by Cal. Civ. Code §1761(d).

111. Plaintiff and Class members purchased Lowe's' Products for personal, family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

112. Plaintiff and Class members' purchases from Lowe's each constitutes a "transaction," as defined by Cal. Civ. Code § 1761(e).

113. Venue is proper under Cal. Civil Code § 1780(d) because Lowes's' principal place of business is in a county located in this District and Lowe's does business in numerous counties located in this District, for example, without limitation, Lowe's operates over a dozen Lowe's stores in the counties located in this District. Plaintiff's declaration establishing that this Court is a proper venue for this action is attached hereto as **Exhibit A.**

114. The unlawful methods, acts or practices alleged herein to have been undertaken by Lowe's were all committed intentionally and knowingly. The unlawful methods, acts or

- 35 -

practices alleged herein to have been undertaken by Lowe's did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

115.    Lowe's' conduct alleged herein has violated the CLRA in multiple respects, including, but not limited to, the following:

a.      Lowe's represented that the Products had characteristics that they did not have. (Cal. Civ. Code § 1770(a)(5));

b.      Lowe's advertised the Products with an intent not to sell them as advertised. (Cal. Civ. Code § 1770(a)(9));

c.      Lowe's made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions (Cal. Civ. Code § 1770(a)(13)); and

d.      Lowe's misrepresented that the Products were supplied in accordance with previous representations when they were not. (Cal. Civ. Code § 1770(a)(16)).

116.    With respect to any omissions, Lowe's at all relevant times had a duty to disclose the information in question because, inter alia: (a) Lowe's had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Lowe's concealed material information from Plaintiff and Class members; and (c) Lowe's made partial representations which were false and misleading absent the omitted information.

117.    Lowe's intentionally deceived Plaintiff and the Class, and continues to deceive the public, by advertising false discounts and false reference prices.

118.    Lowe's' misrepresentations deceive and have a tendency to deceive the reasonable consumer and the general public.

119.    Lowe's' misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

120.    As a direct, substantial, and/or proximate result of Lowe's' unlawful conduct, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

121.    Plaintiff and Class members reasonably relied on Lowe's' material misrepresentations, and would not have purchased Lowe's' Products at the prices that they paid had they known the truth.

122.    Plaintiff and Class members did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts Lowe's represented and promised to them. Plaintiff and Class members did not receive Products that were worth the inflated amount that Lowe's represented to them; the Products did not regularly sell for, and were not actually worth, the fictitious strikethrough reference price advertised by Lowe's.

123.    By its conduct and omissions alleged herein, Lowe's caused the demand for the Products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to Lowe's. Put differently, as a result of its misrepresentations, Lowe's has been able to charge a price premium for the Products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Lowe's would have had to charge less for the Products in order to enjoy the same level of demand.

124.    **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the CLRA to protect the general public from Lowe's' false advertisements, misrepresentations, and omissions.

125.    Lowe's' misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Lowe's absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Lowe's from committing the unlawful practices alleged herein.

126.    The balance of the equities favors the entry of permanent public injunctive relief against Lowe's. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Lowe's' ongoing false advertising absent the entry of permanent public injunctive relief against Lowe's.

127.    Plaintiff lacks an adequate remedy at law to prevent Lowe's from engaging in the unlawful practices alleged herein. Plaintiff would purchase Products from Lowe's again if she

could have confidence regarding the truth of Lowe's' prices and the value of its Products. Plaintiff will be harmed if, in the future, she is left to guess as to whether Lowe's is providing a legitimate sale or not, and whether Lowe's' Products are actually worth the amount that Lowe's is representing.

128.     Also, monetary damages are not an adequate remedy at law for <u>future</u> harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at \*3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: <u>First</u>, damages will not prevent Lowe's from engaging in its unlawful conduct. <u>Second</u>, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what Product(s) Plaintiff may want or need in the future. <u>Third</u>, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by Lowe's.

129.     In accordance with California Civil Code § 1782(a), Plaintiff, through counsel, served Lowe's with notice of its CLRA violations by certified mail, return receipt requested, on November 7, 2024. If Lowe's fails to provide appropriate relief for its CLRA violations within 30 days of its receipt of Plaintiff's notice letter, Plaintiff will amend this complaint to seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b), along with attorneys' fees and costs.

**<u>COUNT II</u>**
**Violation of California's False Advertising Law ("FAL")**
**California Business & Professions Code § 17500** *et seq.*

130.     Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

131.     Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

- 38 -

132.    Lowe's has engaged in false or misleading advertising in violation of California Business & Professions Code § 17500, *et seq.*, also known as California's False Advertising Law ("FAL").

133.    Lowe's has advertised discounts and reference prices that are false, misleading, and have a capacity, likelihood or tendency to deceive reasonable consumers. *See*, *e.g.*, *Kasky*, 27 Cal.4th at 951 (UCL and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public" (citation omitted)); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 722 (2018) (same); *Overstock.com, Inc.*, 2014 WL 657516, at *23 (Feb. 5, 2014, Cal. Sup. Ct.) (same).

134.    Additionally, Lowe's has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not true former prices and were not the prevailing market price in the three months immediately preceding the advertisement. Nor do Lowe's' former price advertisements state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.

135.    With respect to omissions, Lowe's at all relevant times had a duty to disclose the information in question because, inter alia: (a) Lowe's had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Lowe's concealed material information from Plaintiff and Class members; and (c) Lowe's made partial representations which were false or misleading absent the omitted information.

136.    Lowe's committed such violations of the FAL with actual knowledge that its advertising was untrue or misleading, or Lowe's, in the exercise of reasonable care, should have known that its advertising was untrue or misleading.

137.    Lowe's' misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

- 39 -

138.    Lowe's' misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

139.    As a direct and proximate result of Lowe's' violations of the FAL, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

140.    Plaintiff and Class members reasonably relied on Lowe's' material misrepresentations, and would not have purchased Lowe's' Products at the prices that they paid had they known the truth.

141.    Plaintiff and Class members did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts Lowe's represented and promised to them. Plaintiff and Class members did not receive Products that were worth the inflated amount that Lowe's represented to them; the Products did not regularly sell for, and were not actually worth, the fictitious strikethrough reference price advertised by Lowe's.

142.    By its conduct and omissions alleged herein, Lowe's caused the demand for the Products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to Lowe's. Put differently, as a result of its misrepresentations, Lowe's has been able to charge a price premium for the Products that it would not be able to charge absent the misrepresentations.

143.    By its conduct and omissions alleged herein, Lowe's received more money from Plaintiff and Class members than it should have received. Lowe's should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

144.    Plaintiff seeks an order granting restitution to Plaintiff and Class members in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

145.    **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the FAL to protect the general public from Lowe's' false advertisements, misrepresentations, and omissions.

146.     Lowe's' misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Lowe's absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Lowe's from committing the unlawful practices alleged herein.

147.     The balance of the equities favors the entry of permanent public injunctive relief against Lowe's. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Lowe's' ongoing false advertising absent the entry of permanent public injunctive relief against Lowe's.

148.     Plaintiff lacks an adequate remedy at law to prevent Lowe's from engaging in the unlawful practices alleged herein. Plaintiff would purchase Products from Lowe's again if she could have confidence regarding the truth of Lowe's' prices and the value of the Products. Plaintiff will be harmed if, in the future, she is left to guess as to whether Lowe's is providing a legitimate sale or not, and whether Lowe's' Products are actually worth the amount that Lowe's is representing.

149.     Also, monetary damages are not an adequate remedy at law for <u>future</u> harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: <u>First</u>, damages will not prevent Lowe's from engaging in its unlawful conduct. <u>Second</u>, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what Product(s) Plaintiff may want or need in the future. <u>Third</u>, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by Lowe's.

- 41 -

**Violation of California's Unfair Competition Law ("UCL")**
**California Business & Professions Code § 17200 *et seq.***

150.　Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

151.　Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

152.　California Business & Professions Code § 17200, *et seq.*, also known as California's Unfair Competition Law ("UCL"), prohibits any unfair, unlawful, or fraudulent business practice.

153.　**"Unlawful" Prong.** Lowe's has violated the UCL by engaging in the following unlawful business acts and practices:

　　　a.　Making material misrepresentations in violation of Cal. Civ. Code §§ 1770(a)(5), (9), (13), and (16) (the CLRA);

　　　b.　Making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* (the FAL);

　　　c.　Engaging in deceit in violation of Cal Civ. Code §§ 1709–1710; and

　　　d.　Employing deceptive discount price advertisements as identified by 16 C.F.R § 233.1 *et seq.*

154.　**"Unfair" and "Fraudulent" Prongs.** Lowe's has violated the UCL by engaging in the following unfair and/or fraudulent business acts and practices:

　　　a.　Advertising false reference prices;

　　　b.　Advertising false discounts, including percentage-off and dollar-off discounts; and

　　　c.　Advertising false "limited-time" sales and sale events.

155.　With respect to omissions, Lowe's at all relevant times had a duty to disclose the information in question because, inter alia: (a) Lowe's had exclusive knowledge of material

information that was not known to Plaintiff and Class members; (b) Lowe's concealed material information from Plaintiff and Class members; and (c) Lowe's made partial representations which were false and misleading absent the omitted information.

156.    Lowe's' misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

157.    Lowe's' misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

158.    As a direct and proximate result of Lowe's' violations of the UCL, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

159.    Plaintiff and Class members reasonably relied on Lowe's' material misrepresentations, and would not have purchased Lowe's' Products at the prices that they paid had they known the truth.

160.    Plaintiff and Class members did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts Lowe's represented and promised to them. Plaintiff and Class members did not receive Products that were worth the inflated amount that Lowe's represented to them; the Products did not regularly sell for, and were not actually worth, the fictitious strikethrough reference price advertised by Lowe's.

161.    By its conduct and omissions alleged herein, Lowe's caused the demand for the Products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to Lowe's. Put differently, as a result of its misrepresentations, Lowe's has been able to charge a price premium for the Products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Lowe's would have had to charge less for the Products in order to enjoy the same level of demand.

162.    By its conduct and omissions alleged herein, Lowe's received more money from Plaintiff and Class members than it should have received. Lowe's should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

163. Lowe's' conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class members. Perpetrating a years-long scheme of misleading and overcharging customers is immoral, unethical, and unscrupulous. Moreover, Lowe's' conduct is oppressive and substantially injurious to consumers. There is no utility to Lowe's' conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Lowe's' conduct alleged herein.

164. Plaintiff seeks an order granting restitution to Plaintiff and Class members in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

165. **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the UCL to protect the general public from Lowe's' false advertisements, misrepresentations, and omissions.

166. Lowe's' misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Lowe's absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Lowe's from committing the unlawful practices alleged herein.

167. The balance of the equities favors the entry of permanent public injunctive relief against Lowe's. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Lowe's' ongoing false advertising absent the entry of permanent public injunctive relief against Lowe's.

168. Plaintiff lacks an adequate remedy at law to prevent Lowe's from engaging in the unlawful practices alleged herein. Plaintiff would purchase Products from Lowe's again if she could have confidence regarding the truth of Lowe's' prices and the value of its Products. Plaintiff will be harmed if, in the future, she is left to guess as to whether Lowe's is providing a legitimate sale or not, and whether Lowe's' Products are actually worth the amount that Lowe's is representing.

- 44 -

169.     Also, monetary damages are not an adequate remedy at law for <u>future</u> harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: <u>First</u>, damages will not prevent Lowe's from engaging in its unlawful conduct. <u>Second</u>, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what Product(s) Plaintiff may want or need in the future. <u>Third</u>, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by Lowe's.

## **PRAYER FOR RELIEF**

Plaintiff Prescila Lovell, on behalf of herself and the proposed Class, requests that the Court order relief and enter judgment against Lowe's as follows:

1.     Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and her counsel to represent the Class;

2.     Order that the discovery rule applies to extend any applicable limitations period and the corresponding class period back to the date Lowe's first engaged in the unlawful conduct alleged herein (which based on counsel's investigation, is at least April 2021 and is likely earlier);

3.     Declare that Lowe's' conduct alleged herein violates the CLRA, FAL, and UCL;

4.     Order disgorgement and/or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Lowe's obtained, directly or indirectly, from Plaintiff and Class members as a result of the unlawful conduct alleged herein;

5.     Permanently enjoin Lowe's from engaging in the unlawful conduct alleged herein;

- 45 -

6.    Order that Lowe's maintain the following records for each daily Product[4] offering in its retail stores and on its website for at least two years from the date of each advertisement and/or offer for sale of the Product, for auditing purposes to ensure compliance with the ordered injunctive relief: (1) the advertised reference price for each Product; (2) the offer price and/or net selling price of each Product; and (3) any discount percentage and/or any other discount that was advertised and/or applicable to each Product;

7.    Retain jurisdiction to monitor Lowe's' compliance with the permanent injunctive relief;

8.    Order any other equitable relief the Court deems appropriate;

9.    Order Lowe's to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

10.   Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted on November 8, 2024, by:

WEAVER BENNETT & BLAND, P.A.

By: _/s/ Michael David Bland_
      Michael David Bland
Michael David Bland, NC Bar No. 008179
dbland@wbbatty.com
David B. Sherman Jr., NC Bar No. 47153
dsherman@wbbatty.com
196 North Trade Street
Matthews, North Carolina 28106
Tel: (704) 844-1400
Fax: (704) 845-1503

---

[4] "Products" are defined in this Complaint as Bali and Levolor blinds and shades, and major appliances such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers.

- 46 -

SIGMON, CLARK, MACKIE, HANVEY & FERRELL, P.A.

By: _/s/ Andy Howell_____
    Andrew J. Howell

Andrew J. Howell, NC Bar No. 42921
andy.howell@sigmonclark.com
R. Jason White, NC Bar No. 31860
jason.white@sigmonclark.com
Post Office Drawer 1470
Hickory, North Carolina 28603
Tel: (828) 328-2596
Fax: (828) 328-6876


HATTIS & LUKACS
Daniel M. Hattis (*pro hac vice* to be submitted)
dan@hattislaw.com
Paul Karl Lukacs (*pro hac vice* to be submitted)
pkl@hattislaw.com
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: (425) 233.8650
Fax: (425) 412.7171

*Attorneys for Plaintiffs and the Proposed Class*

- 47 -